**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ANTONIO SPIZZIRRI JR.,

           Plaintiff,

v.

PNC BANK, N.A. and SAFEGUARD
PROPERTIES MANAGEMENT, LLC,

           Defendants.

Case No.: 1:20-CV-03839

## DEFENDANT PNC BANK'S ANSWER AND AFFIRMATIVE DEFENSES AND OTHER DEFENSES TO PLAINTIFF'S COMPLAINT

Defendant PNC BANK, N.A. ("PNC" or "Defendant"), through its attorneys Clark Hill PLC, states as follows for its Answer and Affirmative and Other Defenses to Plaintiff's Complaint:

### PRELIMINARY STATEMENT

A.    Unless expressly admitted, each factual allegation is denied as untrue.

B.    The complete document referred to, quoted, or paraphrased is the best evidence of the contents thereof and must be considered in its entirety.

### NATURE OF ACTION

1.    Plaintiff brings this action seeking redress for breach of contract, intentional infliction of emotional distress, intrusion upon seclusion, trespass to property, violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") (815 ILCS 505/1 *et seq.*), conversion, and negligence.

**ANSWER:    This paragraph reflects Plaintiff's characterization of the nature of this action, to which no response is required. To the extent a response is required, PNC denies as untrue that it engaged in any wrongdoing or is liable to Plaintiff in any amount.**

## PARTIES

2.    ANTONIO SPIZZIRI, JR. ("Plaintiff") is a natural person domiciled in the State of Illinois.

**ANSWER:   PNC lacks knowledge or information sufficient to form a belief as to this allegation, which has the effect of a denial.**

3.    PNC BANK, N.A. ("PNC") is a national banking association organized and existing under the laws of the State of Delaware. PNC is a national mortgage originator and servicer. PNC originates and services thousands of mortgage loans nationwide.

**ANSWER:   PNC admits only that it is a national banking association. PNC denies as untrue that it is organized and exists "under the laws of the State of Delaware." PNC is organized under the laws of the United States. PNC lacks knowledge or information sufficient to form a belief as to the allegations that it is a "national mortgage originator and servicer," or that it "originates and services thousands of mortgage loan nationwide," as it is unclear what Plaintiff means by use of this terminology.**

4.    PNC maintains its principal place of business in Wilmington, Delaware.

**ANSWER:   Denied as untrue.**

5.    PNC is a citizen of the State of Delaware.

**ANSWER:   PNC admits that, for diversity jurisdiction purposes, it is considered a citizen of the State of Delaware.**

6.    SAFEGUARD PROPERTIES MANAGEMENT, LLC ("Safeguard") is a limited liability company organized and existing under the laws of Delaware that provides property preservation services and debt collection services to mortgage loan servicers. Safeguard provides property preservation and debt collection services to mortgage loan servicers that service mortgage

loans secured by real estate located in Illinois. Safeguard is registered with the Illinois Secretary of State.

**ANSWER:** **PNC lacks knowledge or information sufficient to form a belief as to this paragraph, which has the effect of a denial.**

7. Safeguard maintains its principal place of business in Valley View, Ohio.

**ANSWER:** **PNC lacks knowledge or information sufficient to form a belief as to this paragraph, which has the effect of a denial.**

8. Safeguard's sole member is Safeguard Holdings, L.P.

**ANSWER:** **PNC lacks knowledge or information sufficient to form a belief as to this paragraph, which has the effect of a denial.**

9. Safeguard Holdings, L.P. is a Delaware limited partnership whose general partner is Safeguard Holdings, G.P., LLC. Safeguard Holdings, G.P., LLC is a Delaware limited liability company whose members are KJH Holdings Co., Inc., and four irrevocable family trusts. KJH Holdings Co., Inc. is an Ohio corporation with its principal place of business in Ohio. The four family trusts are all Ohio trusts with all their trustees, grantors, and beneficiaries being domiciled in and residents of Ohio.

**ANSWER:** **PNC lacks knowledge or information sufficient to form a belief as to this paragraph, which has the effect of a denial.**

## JURISDICTION AND VENUE

10. Federal diversity jurisdiction exists pursuant to 28 U.S.C. § 1332 because (1) complete diversity of citizenship exists, and (2) the amount in controversy exceeds the sum or value of $75,000.00.

**ANSWER:** **This paragraph reflects a conclusion of law, to which no response is required.**

3

11.     For diversity jurisdiction purposes, the citizenship of a limited liability company (LLC) is the citizenship of each of its members. Camico Mut. Ins. Co. v. Citizens Bank, 473 F.3d 989, 992 (7th Cir. 2007).

**ANSWER:     This paragraph reflects a conclusion of law, to which no response is required.**

## FACTUAL ALLEGATIONS

12.     Plaintiff's property located at 5725 Riviera Boulevard, Plainfield, Illinois 60586 ("Property" or "Plaintiff's Property") was originally secured by a mortgage in 2007 and has been refinanced multiple times since.

**ANSWER:     PNC lacks knowledge or information sufficient to form a belief as to this paragraph, which has the effect of a denial.**

13.     On March 6, 2015, Plaintiff refinanced an existing loan secured by Plaintiff's property by executing a mortgage ("Mortgage") in favor of PNC Mortgage, a division of PNC Bank, N.A.

**ANSWER:     PNC admits only that on March 6, 2015, Plaintiff granted the subject mortgage to PNC to secure repayment of the subject loan.**

14.     The Mortgage secured a promissory note executed by Plaintiff in the amount of $219,961.00 ("Loan").

**ANSWER:     Admitted.**

15.     In 2016, Plaintiff purchased another home to accommodate his growing family and rented his Property.

**ANSWER:     PNC lacks knowledge or information sufficient to form a belief as to the allegation, which has the effect of a denial.**

ClarkHill\19865\410777\260552327.v5-8/20/20

16.     Despite moving, Plaintiff left a significant amount of his personal property at the Property.

**ANSWER:     PNC lacks knowledge or information sufficient to form a belief as to the allegation, which has the effect of a denial.**

17.     Plaintiff experienced some trouble with his renters in 2017, and contacted PNC regarding hardship assistance options in December 2017.

**ANSWER:     PNC lacks knowledge or information sufficient to form a belief as to the allegation, which has the effect of a denial, as, among other things, Plaintiff fails to state the specific date on or method by which he allegedly contacted PNC in December 2017, or the individual, if any, with whom he communicated.  PNC admits only that it had some contact with Plaintiff during December 2017.**

18.     PNC informed Plaintiff that an option could not be considered until the Loan was two months delinquent.

**ANSWER:     PNC lacks knowledge or information sufficient to form a belief as to the allegation, which has the effect of a denial, as, among other things, Plaintiff fails to state the specific date on which or method by which he allegedly communicated with PNC, or the individual, if any, with whom he communicated.  Further, it is unclear what Plaintiff means by an "option."  Answering, further PNC denies that Plaintiff was told foreclosure avoidance options could not be considered until the subject loan was two months delinquent.**

19.     After becoming delinquent on the Loan, Plaintiff once again requested hardship assistance from PNC.

**ANSWER:     PNC lacks knowledge or information sufficient to form a belief as to the allegation, which has the effect of a denial, as, among other things, Plaintiff fails to state the**

**specific date on which or method by which he allegedly requested hardship assistance from PNC. PNC admits that Plaintiff has requested hardship assistance at various times.**

20. Plaintiff evicted his tenant and listed the Property for sale.

**ANSWER: PNC lacks knowledge or information sufficient to form a belief as to the allegation, which has the effect of a denial.**

21. Plaintiff made frequent visits to the Property, maintained utility services, and kept the Property in good condition to ensure its habitability and marketability.

**ANSWER: PNC lacks knowledge or information sufficient to form a belief as to the allegation, which has the effect of a denial.**

22. At all times relevant, Plaintiff remained in constant contact with PNC.

**ANSWER: Denied as stated and, therefore, denied as untrue.**

23. At all times relevant, the Property was furnished and well maintained.

**ANSWER: PNC lacks knowledge or information sufficient to form a belief as to the allegation, which has the effect of a denial.**

24. On June 22, 2018, PNC initiated mortgage foreclosure proceedings against Plaintiff and the Property.

**ANSWER: PNC admits only that it initiated an action to foreclose its mortgage interest in the subject property on June 22, 2018.**

25. On or about July 31, 2018, PNC issued a work order(s) to Safeguard to perform specific property preservation services at the Property.

**ANSWER: PNC admits only that issued a work order(s) to Safeguard in connection with the subject property, but denies that it issued such work order(s) on July 31, 2018.**

26.     On or about August 1, 2018, Plaintiff and hired contractors were unable to access the Property due to a lockbox placed on the door.

**ANSWER:    PNC lacks knowledge or information sufficient to form a belief as to the allegation, which has the effect of a denial.  In further response, PNC denies as untrue that it engaged in any wrongdoing or otherwise is liable to Plaintiff.**

27.     Plaintiff quickly noticed the locks to the Property's exterior doors were changed and the garage door opener was not working.

**ANSWER:    PNC lacks knowledge or information sufficient to form a belief as to the allegation, which has the effect of a denial.  In further response, PNC denies as untrue that it engaged in any wrongdoing or otherwise is liable to Plaintiff.**

28.     Plaintiff forced his way into the Property. Upon entering, Plaintiff discovered an REO Entry Log taped to the kitchen counter and the garage door opener was disconnected.

**ANSWER:    PNC lacks knowledge or information sufficient to form a belief as to the allegation, which has the effect of a denial.  In further response, PNC denies as untrue that it engaged in any wrongdoing or otherwise is liable to Plaintiff.**

29.     Moreover, Plaintiff discovered that building supplies and tools were missing and that some of his collectibles and mementos were missing from the Property.

**ANSWER:    PNC lacks knowledge or information sufficient to form a belief as to the allegation, which has the effect of a denial.  In further response, PNC denies as untrue that it engaged in any wrongdoing or otherwise is liable to Plaintiff.**

30.     Enraged by the unauthorized trespass to the Property, Plaintiff called PNC to inform PNC of his startling discovery. PNC immediately denied involvement.

ClarkHill\19865\410777\260552327.v5-8/20/20

**ANSWER:** **PNC lacks knowledge or information sufficient to form a belief as to the allegation, which has the effect of a denial, as among other things, Plaintiff fails to identity the date on or number at which he allegedly called PNC, or the individual, if any, with whom he communicated. In further response, PNC denies as untrue that it engaged in any wrongdoing or otherwise is liable to Plaintiff. Answering further, PNC admits only that there was a contact with Plaintiff on August 1, 2018. PNC denies that Plaintiff's description of the contact is accurate.**

31. After hours of being transferred between departments, Plaintiff called Safeguard, whose information was provided on the REO Entry Log.

**ANSWER:** **PNC lacks knowledge or information sufficient to form a belief as to the allegation, which has the effect of a denial, as among other things, Plaintiff fails to identity the date on or number at which he allegedly called PNC, or the individual(s) or specific department(s), if any, with whom/which he communicated. In further response, PNC denies as untrue that it engaged in any wrongdoing or otherwise is liable to Plaintiff.**

32. Safeguard informed Plaintiff that they were contracted to perform preservation services on the Property "now that it is bank-owned."

**ANSWER:** **PNC lacks knowledge or information sufficient to form a belief as to the allegation, which has the effect of a denial.**

33. Furious, Plaintiff called PNC bank, armed with the information provided by Safeguard, and was able to get PNC to acknowledge that they sent Safeguard to the Property.

34. **ANSWER:** **PNC lacks knowledge or information sufficient to form a belief as to the allegation, which has the effect of a denial, as among other things, Plaintiff fails to identity the date on or number at which he allegedly called PNC, or the individual(s), if any,**

8

**with whom he communicated. In further response, PNC denies as untrue that it engaged in any wrongdoing or otherwise is liable to Plaintiff. Answering further, PNC admits only that there was a contact with Plaintiff on August 1, 2018. PNC denies that Plaintiff's description of the contact is accurate.** PNC informed Plaintiff that it unilaterally secured the Property because it was found to be vacant by their vendor in association to the current delinquency and foreclosure status of the Loan.

**ANSWER: PNC lacks knowledge or information sufficient to form a belief as to the allegation, which has the effect of a denial, as among other things, Plaintiff fails to identity the date on or method by which he allegedly communicated with PNC, or the individual(s), if any, with whom he communicated. In further response, PNC denies as untrue that it engaged in any wrongdoing or otherwise is liable to Plaintiff. Answering further, PNC admits only that there was a contact with Plaintiff on August 1, 2018. PNC denies that Plaintiff's description of the contact is accurate.**

35.     PNC maintained that the Property was secured correctly and in compliance with HUD regulations and insisted no error was made.

**ANSWER: PNC lacks knowledge or information sufficient to form a belief as to the allegation, which has the effect of a denial, as among other things, Plaintiff fails to identity the date on or method by which he allegedly communicated with PNC, or the individual(s), if any, with whom he communicated. In further response, PNC denies as untrue that it engaged in any wrongdoing or otherwise is liable to Plaintiff.**

36.     Moreover, PNC repeatedly discounted Plaintiff's grievance regarding his missing personal property; instead, pointing the finger at Safeguard.

**ANSWER:   PNC lacks knowledge or information sufficient to form a belief as to the allegation, which has the effect of a denial, as among other things, Plaintiff fails to identity the date on or method by which he allegedly communicated with PNC, or the individual(s), if any, with whom he communicated.  In further response, PNC denies as untrue that it engaged in any wrongdoing or otherwise is liable to Plaintiff.**

37.     On or about August 6, 2018, most of Plaintiff's personal property was returned.

**ANSWER:   PNC lacks knowledge or information sufficient to form a belief as to the allegation, which has the effect of a denial.**

38.     On or about October 1, 2018, Plaintiff submitted a request for hardship assistance upon received a short sale offer from a third party for $185,000.00.

**ANSWER:   PNC admits only that on or about October 1, 2018, PNC received Plaintiff's Hardship Assistance Application.  Said Application is a written document that speaks for itself.   No response to Plaintiff's descriptions, interpretations or characterizations is required.  PNC lacks knowledge or information sufficient to form a belief as to what offers were received by Plaintiff, which has the effect of a denial.**

39.     Plaintiff stated his intent was to liquidate the Property.

**ANSWER:   PNC lacks knowledge or information sufficient to form a belief as to what Plaintiff "stated," inasmuch as Plaintiff fails to identify the date or form of such alleged statement, which has the effect of a denial.**

40.     On October 3, 2018, PNC acknowledged that Plaintiff "requested hardship assistance, and [they] received [Plaintiff's] complete Hardship Assistance Application on October 1, 2018."

10

**ANSWER:** **PNC admits only that on October 3, 2018, PNC sent Plaintiff a letter containing the language quoted in this paragraph. In further response, PNC states that the October 3, 2018 letter is the best evidence of its contents and must be considered in its entirety. Further, said letter is a written document that speaks for itself. No response to Plaintiff's descriptions, interpretations or characterizations is required.**

41.     PNC mailed Plaintiff a letter, dated October 19, 2018, which stated:

> **Based on a review of the information you provided, we are unable to offer loan assistance to you at this time.**

> We have received your request for assistance. Based on a review of the information you provided, we are unable to offer loan assistance at this time.

> ***

> We have completed our review of your hardship assistance request. However, we cannot approve your request for assistance for the:

> ***

> Short Sale because A fully executed purchase contract has not been received.

**ANSWER:** **PNC admits only that on October 19, 2018, PNC sent Plaintiff a letter containing the language quoted in this paragraph. In further response, PNC states that Plaintiff omits portions of the contents of the October 19, 2018 letter from this paragraph, and that the full October 19, 2018 letter is the best evidence of its contents and must be considered in its entirety. Further, said letter is a written document that speaks for itself. No response to Plaintiff's descriptions, interpretations or characterizations is required.**

42.     On November 8, 2018, PNC advised Plaintiff that they could not offer him loan assistance at that time.

**ANSWER:** **PNC admits only that on November 8, 2018, PNC sent Plaintiff a letter advising Plaintiff that PNC was "unable to offer loan assistance at this time." In further**

11

response, PNC states that the full November 8, 2018 letter is the best evidence of its contents and must be considered in its entirety. Further, said letter is a written document that speaks for itself. No response to Plaintiff's descriptions, interpretations or characterizations is required.

43. PNC could not approve the request for a short sale because the minimum net proceeds required for the Property were not met.

**ANSWER: PNC admits only that the November 8, 2018 letter referenced above stated, among other things, "The minimum net proceeds required for a Short Sale on your property were not met." In further response, PNC states that the full November 8, 2018 letter is the best evidence of its contents and must be considered in its entirety. Further, said letter is a written document that speaks for itself. No response to Plaintiff's descriptions, interpretations or characterizations is required.**

44. Specifically, PNC determined Plaintiff's Property value to be $219,000.00 – significantly more than what multiple real estate agents stated.

**ANSWER: PNC denies as untrue that it "determined" the value of the subject property to be $219,000.00. PNC lacks knowledge or information sufficient to form a belief as to the remaining allegations in this paragraph, which has the effect of a denial, inasmuch as, among other things, Plaintiff fails to identify the "multiple real estate agents" to whom this paragraph refers. In further response, PNC denies as untrue that it engaged in any wrongdoing, or that it is otherwise liable to Plaintiff.**

45. Nonetheless, Plaintiff continued marketing the Property despite PNC's outrageous demands; however, was not able to gain transaction – taking into account Plaintiff's sales price.

**ANSWER: PNC lacks knowledge or information sufficient to form a belief as to the allegation, which has the effect of a denial. In further response, PNC denies as untrue that it made "outrageous demands," that it engaged in any wrongdoing, or that it is otherwise liable to Plaintiff.**

46. Soon thereafter, Plaintiff found water downstairs and discovered the sump pump was unplugged.

**ANSWER: PNC lacks knowledge or information sufficient to form a belief as to the allegation, which has the effect of a denial.**

47. Around that time, Plaintiff also "winterized" the Property.

**ANSWER: PNC lacks knowledge or information sufficient to form a belief as to the allegation, which has the effect of a denial.**

48. Notwithstanding, Safeguard, once more, entered the Property to "winterize" it themselves.

**ANSWER: PNC lacks knowledge or information sufficient to form a belief as to the allegation, which has the effect of a denial.**

49. Safeguard also entered Plaintiff's Property on January 4, 2019 without consent.

**ANSWER: This paragraph reflects a conclusion of law, to which no response is required. To the extent a response is required, PNC states that it lacks knowledge or information sufficient to form a belief as to the allegation that Safeguard entered the subject property on January 4, 2019, which has the effect of a denial. In further response, PNC denies as untrue that it engaged in any wrongdoing or otherwise is liable to Plaintiff.**

50. Safeguard discovered the basement flooded, and returned on January 10, 2019.

**ANSWER: PNC states that it lacks knowledge or information sufficient to form a belief as to the allegation, which has the effect of a denial.**

51.     Safeguard allegedly pumped out the flood water and determined the sump pump "operatble."

**ANSWER:     PNC states that it lacks knowledge or information sufficient to form a belief as to the allegation, which has the effect of a denial.**

52.     On February 11, 2019, Safeguard came back only to discover the basement flooded once more.

**ANSWER: PNC states that it lacks knowledge or information sufficient to form a belief as to the allegation, which has the effect of a denial.**

53.     Two days later, on February 13, 2019, Safeguard replaced Plaintiff's sump pump.

**ANSWER: PNC states that it lacks knowledge or information sufficient to form a belief as to the allegation, which has the effect of a denial.**

54.     On March 16, 2019, Safeguard returned and discovered the breakers off and the basement flooded again.

**ANSWER: PNC states that it lacks knowledge or information sufficient to form a belief as to the allegation, which has the effect of a denial.**

55.     Safeguard turned the breakers back on, and water was removed from the basement.

**ANSWER: PNC states that it lacks knowledge or information sufficient to form a belief as to the allegation, which has the effect of a denial.**

56.     As result of all the basement flooding (and damage caused), Plaintiff was forced to pull the Property from the market.

14

**ANSWER: PNC states that it lacks knowledge or information sufficient to form a belief as to the allegation, which has the effect of a denial. In further response, PNC denies as untrue that it engaged in any wrongdoing or otherwise is liable to Plaintiff.**

57. At all times relevant, Plaintiff was the legal owner of the Property.

**ANSWER: This paragraph reflects a conclusion of law, to which no response is required.**

58. At all times relevant, the Property was furnished, well-maintained (exterior in good condition, grass cut, no city code violations, etc.), and contained Plaintiff's personal property.

**ANSWER: PNC states that it lacks knowledge or information sufficient to form a belief as to the allegation, which has the effect of a denial.**

59. At all times relevant, Defendants had actual knowledge that Plaintiff was in the process of selling the home.

**ANSWER: This paragraph reflects a conclusion of law, to which no response is required. To the extent a response is required, denied as stated and, therefore, denied as untrue.**

60. At all times relevant, Defendants did not have authority to enter the Property.

**ANSWER: This paragraph reflects a conclusion of law, to which no response is required. To the extent a response is required, denied as untrue.**

61. At all times relevant, Defendants did not notify Plaintiff that they would be sending representatives to the Property to determine if the subject property was vacant.

**ANSWER: Denied as stated and, therefore, denied as untrue.**

62. At all times relevant, Defendants did not have a legal right to enter the Property.

**ANSWER: This paragraph reflects a conclusion of law, to which no response is required. To the extent a response is required, denied as untrue.**

63. At all times relevant, PNC had a consensual agency relationship with Safeguard whereby PNC (as the principal) had the right to control and direct the activities of Safeguard, and Safeguard had the authority to act on behalf of PNC. PNC, as the principal of Safeguard, is liable for the acts of Safeguard and its agents.

**ANSWER: This paragraph reflects a conclusion of law, to which no response is required. To the extent a response is required, PNC denies as untrue that it engaged in any wrongdoing or otherwise is liable to Plaintiff.**

## DAMAGES

63. As result of Defendants' unlawful conduct, Plaintiff suffered significant damages, including but not limited to, endless stress, severe anxiety, excruciating mental anguish, loss of possession of the Property, deprivation of the use of the Property, and loss of time.

**ANSWER: This paragraph reflects a conclusion of law, to which no response is required. To the extent a response is required, denied as untrue.**

64. As result of Defendant's repeated reentry and associated poor workmanship, Plaintiff suffered significant water damage in his basement, forcing him to pull the Property from the market – sentencing him to eventual foreclosure.

**ANSWER: This paragraph reflects a conclusion of law, to which no response is required. To the extent a response is required, denied as untrue.**

65. As set forth above, Defendants' unlawful conduct further resulted in the loss of valuable and sentimental personal property, including but not limited to:

- Baseball card collection;

- Card tables (2);

- Ceiling fan;

16

- Door lock (2);

- Drill;

- Drop cloths/tarp;

- Folding chairs;

- Garage door opener;

- Hardwood flooring (2)

- Lockbox;

- Paint

- Sewing machine;

- Sewing machine table;

**ANSWER: This paragraph reflects a conclusion of law, to which no response is required. To the extent a response is required, denied as untrue.**

66.    As noted above, Defendants' conduct frustrated Plaintiff's effort to sell the Property or otherwise take advantage of loss mitigation offers. As a result, Plaintiff's financial liability on the Loan continued to accrue, exposing Plaintiff to an increased risk for a personal deficiency after the Property was sold.

**ANSWER:    This paragraph reflects a conclusion of law, to which no response is required. To the extent a response is required, denied as untrue.**

<u>**CLAIMS FOR RELIEF**</u>

**COUNT I – BREACH OF CONTRACT**
**(AGAINST PNC BANK, N.A.)**

67.    All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

**ANSWER:    PNC incorporates the preceding responses by reference.**

17

68. The Mortgage is a valid and enforceable contract between Plaintiff and PNC.

**ANSWER:** **This paragraph reflects a conclusion of law, to which no response is required.**

69. The Mortgage, in pertinent part, provides:

**5. Occupancy, Preservation, Maintenance and Protection of the Property**

* * *

Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Id. (emphasis added).

**ANSWER:** **This paragraph reflects Plaintiff's characterization and quotation of the subject Mortgage, to which no response is required. To the extent a response is required, the Mortgage is the best evidence of its contents and must be considered in its entirety. Further, said Mortgage is a written document that speaks for itself. No response to Plaintiff's descriptions, interpretations or characterizations is required.**

70. PNC breached the Mortgage by forcibly entering the Property (through its agent Safeguard), changing the locks, and absconding with Plaintiff's personal property despite the fact that the Property was neither vacant nor abandoned.

**ANSWER:** **This paragraph reflects a conclusion of law, to which no response is required. To the extent a response is required, denied as untrue.**

71. Such conduct was not reasonable to protect and preserve the Property.

**ANSWER:** **This paragraph reflects a conclusion of law, to which no response is required. To the extent a response is required, denied as stated and, therefore, denied as untrue.**

72. Specifically, at the time of the forcible entry, the Property was well-maintained (exterior in good condition, grass cut, no city code violations, etc.), and contained Plaintiff's personal property.

**ANSWER:** **Denied as stated and, therefore, denied as untrue.**

73.     Moreover, forcibly entering the Property was not reasonable, especially in light of the fact that Plaintiff was in contact with PNC regarding selling the Property. In other words, PNC could have easily requested that Plaintiff provide it access to the Property for inspection and/or preservation. Instead, PNC (through its agent) forcibly entered the Property and changed the locks without any notice or authorization from Plaintiff. Such action was unreasonable by any objective standard.

**ANSWER:** **This paragraph reflects a conclusion of law, to which no response is required. To the extent a response is required, denied as stated and, therefore, denied as untrue.**

74.     As noted above, Plaintiff was in constant contact with PNC about the Property's status and thus PNC knew or should have known that the Property was neither vacant nor abandoned at the time Defendants forcibly broke into the Property.

**ANSWER:** **Denied as stated and, therefore, denied as untrue.**

75.     Moreover, PNC breached the contract by violating governing Illinois law. Specifically, Paragraph 14 provides that the Mortgage "shall be governed by Federal law and the law of the jurisdiction in which the Property is located."

**ANSWER:** **This paragraph reflects a conclusion of law, to which no response is required. To the extent a response is required, denied as untrue.  The remainder of this paragraph reflects Plaintiff's characterization and quotation of the subject Mortgage, to which no response is required.  To the extent a response is required, the Mortgage is the best evidence of its contents and must be considered in its entirety. Further, said Mortgage is a written document that speaks for itself.  No response to Plaintiff's descriptions, interpretations or characterizations is required.**

19

76.     Given that the Property is located in Illinois, Illinois law governs the Mortgage.

**ANSWER:     This paragraph reflects a conclusion of law, to which no response is required.**

77.     PNC's forcible entry into the Property violated several Illinois laws.

**ANSWER:     This paragraph reflects a conclusion of law, to which no response is required. To the extent a response is required, denied as stated and, therefore, denied as untrue.**

78.     First, PNC's conduct violated the Illinois Mortgage Foreclosure Law ("IMFL"). Specifically, the IMFL provides that "prior to the entry of a judgment of foreclosure.....in the case of residential real estate, the mortgagor shall be entitled to possession of the real estate except if 'the court decides to give the mortgagee possession for good cause.'" Hill v. Wells Fargo Bank, N.A., 946 F. Supp. 2d 817, 826 (N.D. Ill. 2013).

**ANSWER:     This paragraph, in part, reflects Plaintiff's characterization and quotation of law, to which no response is required.  The remainder of this paragraph reflects a conclusion of law, to which no response is required.  To the extent a response is required, denied as stated and, therefore, denied as untrue.**

79.     Moreover, the IMFL provides that "any person....who harasses or intimidates such occupants [of mortgaged real estate], with the intent of inducing such occupants to abandon the mortgaged premises, in order to obtain a finding of abandonment....shall be guilty of a class B misdemeanor." Id. citing 735 ILCS 5/15-1104. Accordingly, not only was PNC's conduct a breach of contract but also a crime under Illinois law.

**ANSWER:     This paragraph, in part, reflects Plaintiff's characterization and quotation of law, to which no response is required.  The remainder of this paragraph reflects a conclusion of law, to which no response is required.  To the extent a response is required, denied as stated and, therefore, denied as untrue.**

20

80. Secondly, PNC's forcible entry into the Property constitutes an unlawful trespass under Illinois law. "Under Illinois law, a trespass is an invasion of the interest in the exclusive possession of land, as by entry upon it" Fannie Mae v. Obradovich, 2020 U.S. Dist. LEXIS 93001, at *16-17 (N.D. Ill. 2020).

**ANSWER: This paragraph, in part, reflects Plaintiff's characterization and quotation of law, to which no response is required. The remainder of this paragraph reflects a conclusion of law, to which no response is required. To the extent a response is required, denied as stated and, therefore, denied as untrue.**

81. Without consent or a right to possession, PNC (through its agent) invaded Plaintiff's interests in the exclusive possession of the Property by: (1) forcibly entering and assuming dominion and control of the Property; and (2) placing foreign locks on the doors of the Property and unplugging Plaintiff's garage door opener, depriving Plaintiff of access to the Property.

**ANSWER: This paragraph reflects a conclusion of law, to which no response is required. To the extent a response is required, denied as stated and, therefore, denied as untrue.**

82. Upon information and belief, PNC approved and ratified the forcible entry into the Property. As the principal of Safeguard, PNC is liable for trespass because "a person who aids, abets, assists, or directs the commission of a trespass by another is therefore liable for that trespass." Id. at *17.

**ANSWER: This paragraph reflects a conclusion of law, to which no response is required. To the extent a response is required, denied as stated and, therefore, denied as untrue. The remainder of this paragraph reflects Plaintiff's characterization and quotation of law, to which no response is required.**

21

83.     PNC's forced entry and unlawful trespass upon the Property (through its agent) interfered with Plaintiff's possession, ownership, use, and enjoyment of the Property.

**ANSWER:     This paragraph reflects a conclusion of law, to which no response is required. To the extent a response is required, denied as stated and, therefore, denied as untrue.**

84.     Accordingly, PNC breached the contract by engaging in conduct that violates Illinois law.

**ANSWER:     This paragraph reflects a conclusion of law, to which no response is required. To the extent a response is required, denied as untrue.**

85.     Lastly, PNC's conduct (through its agent) as set forth above breached the implied covenant of good faith and fair dealing. Specifically, PNC's self-help conduct (through its agent) in taking possession of the Property without Plaintiff's authorization and frustrating Plaintiff's ability to complete a short sale was done in bad faith and demonstrates PNC's failure to exercise its contractual discretion reasonably and with proper motive.

**ANSWER:     This paragraph reflects a conclusion of law, to which no response is required. To the extent a response is required, denied as stated and, therefore, denied as untrue.**

86.     As pled above, Plaintiff suffered significant harm as result of PNC's breach of contract and breach of the implied covenant of good faith and fair dealing.

**ANSWER:     This paragraph reflects a conclusion of law, to which no response is required. To the extent a response is required, denied as stated and, therefore, denied as untrue.**

87.     Moreover, Plaintiff is entitled to punitive damages stemming from PNC's breach of contract as PNC's breach constitutes an independent and willful tort(s) accompanied by wantonness or oppression. See Hunter Douglas Metals, Inc. v. Edward C. Mange Trading Co., 586 F. Supp. 926, 929 (7th Cir. 1984) (finding that where a breach of contract contains allegations

sufficient to support both a contract claim and an independent tort, both may stand and punitive

damages may be awarded if plaintiff is able to sustain his burden under the tort theory.)

**ANSWER:** **This paragraph reflects a conclusion of law, to which no response is required.**

**To the extent a response is required, denied as stated and, therefore, denied as untrue.**

### COUNT II – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (AGAINST ALL DEFENDANTS)

88.     All paragraphs of this Complaint are expressly adopted and incorporated herein as

though fully set forth herein.

**ANSWER:** **PNC incorporates the preceding responses by reference.**

89.     To state a claim for intentional infliction of emotional distress, plaintiff must

establish that (1) the defendants' conduct was extreme and outrageous; (2) the defendants either

intended to inflict severe emotional distress or knew that there was a high probability that their

conduct would do so; and (3) the defendants' conduct actually caused severe emotional distress.

Honaker v. Smith, 256 F.3d 477, 490 (7th Cir. 2001).

**ANSWER:** **This paragraph reflects Plaintiff's characterization and quotation of law, to**

**which no response is required.**

90.     Defendants' course of conduct in forcibly entering the Property without a

contractual or legal basis, changing the locks, damaging personal property in the Property, and

stealing Plaintiff's personal property was extreme and outrageous.

**ANSWER:** **This paragraph reflects a conclusion of law, to which no response is required.**

**To the extent a response is required, denied as stated and, therefore, denied as untrue.**

91.     Defendants knew that the aforementioned conduct would cause severe emotional

distress and Plaintiff did in fact suffer severe emotional distress.

**ANSWER:** **Denied as stated and, therefore, denied as untrue.**

23

## COUNT III – INTRUSION UPON SECLUSION
## (AGAINST ALL DEFENDANTS)

92.     All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

**ANSWER:     PNC incorporates the preceding responses by reference.**

93.     To establish a claim for intrusion upon seclusion, Plaintiff must establish (1) there was an unauthorized intrusion into seclusion; (2) the intrusion would be highly offensive to a reasonable person; (3) the matter intruded upon was private; and (4) the intrusion caused anguish and suffering. Maremont v. Susan Fredman Design Group, Ltd., 2011 U.S. Dist. LEXIS 140446, at *20 (N.D. Ill. 2011).

**ANSWER:     This paragraph reflects Plaintiff's characterization of law, to which no response is required.**

94.     Defendants intruded into Plaintiff's seclusion by forcibly entering Plaintiff's Property without consent or valid reason to do so, damaging/destroying Plaintiff's personal property, stealing Plaintiff's personal property, replacing the locks to the doors of entry and unplugging Plaintiff's garage door opener.

**ANSWER:     This paragraph reflects a conclusion of law, to which no response is required. To the extent a response is required, denied as stated and, therefore, denied as untrue.**

95.     Defendants' course of conduct would be highly offensive to a reasonable person.

**ANSWER:     Denied as stated and, therefore, denied as untrue.**

96.     As pled above, Plaintiff was severely harmed by Defendants' conduct.

**ANSWER:     Denied as stated and, therefore, denied as untrue.**

## COUNT IV – TRESPASS TO REAL PROPERTY
## (AGAINST ALL DEFENDANTS)

97.     All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

**ANSWER:     PNC incorporates the preceding responses by reference.**

98.     To prevail on a trespass claim "a plaintiff must plead and prove negligent or intentional conduct by the defendant which resulted in an intrusion on the plaintiff's interest in exclusive possession of land." Sak v. CitiMortgage, Inc., 940 F. Supp. 2d 802, 804 (N.D. Ill. 2013).

**ANSWER:     This paragraph reflects Plaintiff's characterization and quotation of law, to which no response is required.**

99.     At all times relevant, Plaintiff owned the Property and had a legal right to exclusive possession of the Property.

**ANSWER:     This paragraph reflects a conclusion of law, to which no response is required.**

100.     Defendants had actual knowledge that Plaintiff owned and adequately maintained the Property.

**ANSWER:     This paragraph reflects a conclusion of law, to which no response is required.**

101.     Without consent or a right to possession, Defendants forcibly entered and assumed dominion and control of the Property.

**ANSWER:     This paragraph reflects a conclusion of law, to which no response is required. To the extent a response is required, denied as stated and, therefore, denied as untrue.**

102.     Without consent or a right to possession, Defendants placed foreign locks on the doors of the Property and unplugged Plaintiff's garage door opener, thus depriving Plaintiff of immediate access to the Property.

ClarkHill\19865\410777\260552327.v5-8/20/20

**ANSWER:** **This paragraph reflects a conclusion of law, to which no response is required. To the extent a response is required, denied as stated and, therefore, denied as untrue.**

103.    Defendants' forced entry and trespass upon the Property interfered with Plaintiff's possession, ownership, use, and enjoyment of the Property.

**ANSWER:** **This paragraph reflects a conclusion of law, to which no response is required. To the extent a response is required, denied as stated and, therefore, denied as untrue.**

104.    Upon information and belief, it is Defendants' normal business practice to ignore possessory and ownership rights of homeowners, and to illegally take possession of properties without consent or a court order, in conscious disregard of the rights of homeowners.

**ANSWER:** **This paragraph reflects a conclusion of law, to which no response is required. To the extent a response is required, denied as untrue.**

105.    As pled above, Plaintiff was severely harmed by Defendants' conduct.

**ANSWER:** **This paragraph reflects a conclusion of law, to which no response is required. To the extent a response is required, denied as untrue.**

### COUNT V – ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (AGAINST ALL DEFENDANTS)

106.    All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

**ANSWER:** **PNC incorporates the preceding responses by reference.**

107.    Plaintiff is a "person" as defined by 815 ILCS 505/1(c).

**ANSWER:** **This paragraph reflects a conclusion of law, to which no response is required.**

108.    Plaintiff is a "consumer" as defined by 815 ILCS 505/1(e).

**ANSWER:** **This paragraph reflects a conclusion of law, to which no response is required.**

109.    PNC is engaged in "commerce" as defined by 815 ILCS 505/1(f).

**ANSWER:** **This paragraph reflects a conclusion of law, to which no response is required.**

110. Safeguard is engaged in "commerce" as defined by 815 ILCS 505/1(f).

**ANSWER:** **This paragraph reflects a conclusion of law, to which no response is required.**

111. Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act provides:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false, pretense, false promise, misrepresentation or the concealment, suppression, or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived, or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to section 5(a) of the Federal Trade Commission Act.

**ANSWER:** **This paragraph reflects Plaintiff's characterization and quotation of law, to which no response is required.**

112. Defendants violated ICFA (815 ILCS 505/2) by engaging in the following conduct in the course of mortgage servicing and/or property management/preservation services:

    a. Representing to Plaintiff, either expressly or by implication, and with the intent that Plaintiff rely on such representation, that Plaintiff is not entitled to occupy or use the Property when Plaintiff is, in fact, entitled to occupy and use the Property;

    b. Taking possession of Plaintiff's Property without legal justification;

    c. Taking control and asserting dominion over the Property without a court order authorizing the same;

    d.   Employing self-help and taking possession of the Property outside the judicial process mandated by the Illinois Mortgage Foreclosure Law ("IMFL") (defining possessory rights and the prohibition against harassment or intimidation to compel occupants to abandon mortgaged property);

    e.   Unlawfully breaking into Plaintiff's legally-occupied Property;

    f.   Changing the locks of the Property;

    g.   Draining and turning off the water in Plaintiff's legally-occupied Property;

    h.   Damaging/destroying Plaintiff's personal property;

    i.   Unlawfully removing personal property from Plaintiff's legally-occupied Property;

    j.   Exhibiting dominion and control over the Property, and implying that Plaintiff has lost her ownership rights to the Property;

    k.   Failing to adequately manage, supervise and train their employees/agents in the performance of property inspection and preservation services;

    l.   Committing unlawful trespass under the false pretext that such trespass was authorized by the Mortgage;

**ANSWER:  This paragraph reflects conclusions of law, to which no response is required.  To the extent a response is required, denied as stated and, therefore, denied as untrue.**

113.   It was unfair and deceptive for Defendants to deem Plaintiff's Property "abandoned" or "vacant" when Defendants had actual knowledge that Plaintiff's Property was neither abandoned nor vacant and that Plaintiff was in the process of obtaining a buyer for the Property.

**ANSWER: This paragraph reflects a conclusion of law, to which no response is required. To the extent a response is required, denied as stated and, therefore, denied as untrue.**

114.    It was unfair and deceptive for Defendants to unilaterally deem Plaintiff's Property "abandoned" or "vacant" when Plaintiff's Property remained conspicuously occupied and well-maintained.

**ANSWER:    This paragraph reflects a conclusion of law, to which no response is required. To the extent a response is required, denied as stated and, therefore, denied as untrue.**

115.    Defendants' course of conduct was intended to be relied upon by Plaintiff and to buffalo and bully Plaintiff into giving up his possessory rights.

**ANSWER:    This paragraph reflects a conclusion of law, to which no response is required. To the extent a response is required, denied as stated and, therefore, denied as untrue.**

116.    Plaintiff relied upon these acts and was deceived into questioning the legal status of the ownership of the Property, doubting his right to own and use the Property free of invasion, believing a court order was unnecessary, becoming afraid to visit the Property, and losing the peaceful enjoyment and solitude of the Property.

**ANSWER:    This paragraph reflects a conclusion of law, to which no response is required. To the extent a response is required, PNC lacks knowledge or information sufficient to form a belief as to the allegations regarding Plaintiff's beliefs, thoughts and conclusions, which has the effect of a denial. PNC denies any remaining allegations.**

117.    Defendants' conduct offends public policy as it demonstrates a widespread practice of maximizing profits by ignoring the possessory rights of homeowners in violation of the law, circumventing the legal foreclosure process, and profiting from the expedited sale of real property. See Hill v. Wells Fargo Bank, N.A., 946 F. Supp. 2d 817, 827 (N.D. Ill. 2013) ("A practice that

attempts to circumvent the foreclosure process established by Illinois law is against the public policy of Illinois).

**ANSWER: This paragraph reflects Plaintiff's characterization and quotation of law, and conclusion of law, to which no response is required. To the extent a response is required, denied as stated and, therefore, denied as untrue.**

118.    Moreover, Defendants' conduct in bullying Plaintiff out of her Property in an effort to induce Plaintiff to abandon the Property in order to obtain a finding of abandonment is a crime under Illinois law. See 735 ILCS 5/15-1104 ("any person....who harasses or intimidates such occupants [of mortgaged real estate], with the intent of inducing such occupants to abandon the mortgaged premises, in order to obtain a finding of abandonment....shall be guilty of a class B misdemeanor.")

**ANSWER: This paragraph reflects Plaintiff's characterization and quotation of law, and conclusion of law, to which no response is required. To the extent a response is required, denied as stated and, therefore, denied as untrue.**

119.    The commission of such crime clearly violates public policy.

**ANSWER: This paragraph reflects a conclusion of law, to which no response is required. To the extent a response is required, denied as stated and, therefore, denied as untrue.**

120.    Plaintiff had no choice but to submit to Defendants' conduct. Specifically, Plaintiff had no control over (1) the changing of the locks; (2) the unplugging of the garage door opener; (3) the theft of his personal property; (4) the damage to his personal property; and (4) his inability to enjoy the benefits of ownership of the Property.

**ANSWER: Denied as stated and, therefore, denied as untrue.**

121.    Defendants' course of conduct is part of a pattern and practice of behavior that

Defendants routinely engage in.

**ANSWER: This paragraph reflects a conclusion of law, to which no response is required. To the extent a response is required, denied as stated and, therefore, denied as untrue.**

122. As pled above, Plaintiff was severely harmed by Defendants' conduct.

**ANSWER: This paragraph reflects a conclusion of law, to which no response is required. To the extent a response is required, denied as stated and, therefore, denied as untrue.**

123. Defendants' course of conduct further implicates consumer protection concerns generally as consumers reasonably expect:

 a. to be safe and secure in their own property;

 b. their mortgage companies to communicate with them accurately and truthfully regarding the occupancy status of their home or any claims of abandonment/vacancy;

 c. their mortgage companies to refrain from illegal self-help to expedite a foreclosure and bully consumers from their property;

 d. their mortgage companies to follow state and federal law and their own guidelines;

 e. their mortgage companies to adhere to consumer protection laws/statutes as well as investor/mortgage servicing guidelines; and

 f. their mortgage companies will not take illegal action to expedite a foreclosure and bully consumers from their property.

**ANSWER: This paragraph reflects a conclusion of law, to which no response is required. To the extent a response is required, denied as stated and, therefore, denied as untrue.**

124.     An award of punitive damages is appropriate because Defendants' conduct was outrageous, willful, wanton, showed a reckless disregard for the rights of Plaintiff, and was designed to take advantage of a vulnerable individual.

**ANSWER:     This paragraph reflects a conclusion of law, to which no response is required. To the extent a response is required, denied as stated and, therefore, denied as untrue.**

125.     Punitive damages would serve the interests of Illinois consumers in that it would serve to deter similar misconduct in the future.

**ANSWER:     This paragraph reflects a conclusion of law, to which no response is required. To the extent a response is required, denied as untrue.**

**COUNT VI – CONVERSION**
**(AGAINST ALL DEFENDANTS)**

126.     All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

**ANSWER:     PNC incorporates the preceding responses by reference.**

127.     Conversion in Illinois is "the unauthorized deprivation of property from the person entitled to its possession." Sandy Creek Condominium Ass'n v. Stolt & Egner, Inc., 267 Ill. App. 3d 291, 294 (1994).

**ANSWER:     This paragraph reflects Plaintiff's characterization and quotation of law, to which no response is required.**

128.     Conversion's essence is "the wrongful deprivation of one who has a right to the immediate possession of the object unlawfully held." Naiditch v. Shaf Home Builders, Inc., 160 Ill. App. 3d 245, 269 (1987).

**ANSWER:     This paragraph reflects Plaintiff's characterization and quotation of law, to which no response is required.**

ClarkHill\19865\410777\260552327.v5-8/20/20

129.     A cause of action for conversion requires "(1) the unauthorized and wrongful assumption of control, dominion, or ownership by the defendant over the personal property of another; (2) the plaintiff's right in the property; (3) the plaintiff's absolute and unconditional right to immediate possession of the property; and (4) a demand for possession of the property." Id.

**ANSWER:     This paragraph reflects Plaintiff's characterization and quotation of law, to which no response is required.**

130.     Defendants, without authority or consent, assumed control, dominion, or ownership over Plaintiff's personal property as itemized above.

**ANSWER:     This paragraph reflects a conclusion of law, to which no response is required. To the extent a response is required, denied as untrue.**

131.     Plaintiff had an immediate, absolute, and unconditional right to possession to his personal property.

**ANSWER:     This paragraph reflects a conclusion of law, to which no response is required.**

132.     Defendants destroyed or remained in unlawful possession of Plaintiff's personal property.

**ANSWER:     This paragraph reflects a conclusion of law, to which no response is required. To the extent a response is required, denied as untrue.**

**COUNT VII – NEGLIGENCE**
**(AGAINST ALL DEFENDANTS)**

133.     All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

**ANSWER:     PNC incorporates the preceding responses by reference.**

33

134.     Defendants voluntarily exercised control and dominion over the Property and Plaintiff's personal property. Once a party voluntarily undertakes to perform a service, it must do so in a manner that does not increase the risk of harm to the person affected by the undertaking.

**ANSWER:     This paragraph reflects Plaintiff's characterization and conclusion of law, to which no response is required.  To the extent a response is required, denied as stated and, therefore, denied as untrue.**

135.     Defendants took affirmative steps to control access to and possession of the Property by changing the locks and unplugging the garage door opener, restricting access for a period of time, replacing Plaintiff's sump pump, and exercising dominion and control over the personal property therein.

**ANSWER:     This paragraph reflects Plaintiff's conclusion of law, to which no response is required.  To the extent a response is required, denied as stated and, therefore, denied as untrue.**

136.     Defendants breached their duty to take reasonable steps to protect the Property and the personal property contained therein, comply with the law, or follow the practices and procedures within its own manuals and work order guidelines.

**ANSWER:     This paragraph reflects Plaintiff's conclusion of law, to which no response is required.  To the extent a response is required, denied as untrue.**

137.     Defendants breached their duty by (a) failing to protect or secure the Property and its contents; (b) violating the law; (c) failing to allow their own formalized procedures, and (d) failing to use reasonable care when "securing" the subject property.

**ANSWER:     This paragraph reflects Plaintiff's conclusion of law, to which no response is required.  To the extent a response is required, denied as untrue.**

34

138.     Defendants breached their duty to act prudently by absconding with Plaintiff's personal property and by failing to prevent any property loss after voluntarily exercising control and dominion over the Property and its contents.

**ANSWER:     This paragraph reflects Plaintiff's conclusion of law, to which no response is required.  To the extent a response is required, denied as untrue.**

139.     It was reasonably foreseeable that unilaterally taking control and failing to prevent the loss of Plaintiff's personal property would result in harm to Plaintiff.

**ANSWER:     This paragraph reflects Plaintiff's conclusion of law, to which no response is required.  To the extent a response is required, denied as stated and, therefore, denied as untrue.**

140.     It was reasonably foreseeable that taking dominion and control of the Property and actively restricting Plaintiff's access to the Property would damage Plaintiff.

**ANSWER:     This paragraph reflects Plaintiff's conclusion of law, to which no response is required.  To the extent a response is required, denied as stated and, therefore, denied as untrue.**

141.     Defendants were aware that their actions would likely result in injury to Plaintiff, but willfully ignored their duty of reasonable care. Defendants acted with such gross negligence as to indicate willful and wanton disregard of Plaintiff's property rights.

**ANSWER:     This paragraph reflects Plaintiff's conclusion of law, to which no response is required.  To the extent a response is required, denied as stated and, therefore, denied as untrue.**

142.     Defendants' actions proximately caused damages to Plaintiff in the form of loss of personal property and other damages as described above.

**ANSWER:** **This paragraph reflects Plaintiff's conclusion of law, to which no response is required. To the extent a response is required, denied as stated and, therefore, denied as untrue.**

143. As pled above, Plaintiff was severely harmed by Safeguard's conduct.

**ANSWER:** **This paragraph reflects a conclusion of law, to which no response is required. To the extent a response is required, denied as stated and, therefore, denied as untrue.**

WHEREFORE, Defendant PNC requests that the Court dismiss Plaintiff's Complaint with prejudice and award PNC all applicable relief including attorneys' fees and costs.

## AFFIRMATIVE AND OTHER DEFENSES

Defendant PNC, National Association states the following as its Affirmative and Other Defenses to Plaintiff's Complaint:

1. Plaintiff's Complaint fails to state a claim upon which relief may be granted. Defendant PNC reserves the right to bring a motion regarding this failure.

2. Plaintiff's claims are be barred by his failure to mitigate damages.

3. Plaintiff's claims are barred because Plaintiff has not suffered any actual damages.

4. Plaintiff's claims are barred because Plaintiff authorized or ratified the complained-of conduct.

5. Plaintiff's claims are barred because PNC is not the proximate cause of Plaintiff's alleged injury.

6. Plaintiff's claims are barred because Plaintiff's alleged injury were caused by parties or non-parties other than PNC.

7. Plaintiff's claims are be barred by his contributory negligence.

8.      Plaintiff's claims are barred by the equitable doctrines of waiver, estoppel, unclean hands, or laches.

9.      Plaintiff's claims are barred by the doctrines of res judicata or collateral estoppel.

10.     Plaintiff's claims are barred by his failure to occupy the property as his principal residence, in breach of the parties' loan agreement.

Defendant PNC reserves the right to supplement or amend its Affirmative and Other Defenses in accordance with the Federal Rules of Civil Procedure.

Date: August 24, 2020                    Respectfully submitted,

                                         PNC BANK, N.A.


                                         By:    /s/ Amelia S. Newton
                                                One of Its Attorneys


Amelia S. Newton
anewton@clarkhill.com
CLARK HILL PLC
130 E. Randolph Street, Suite 3900
Chicago, Illinois 60601
(T) 312-985-5900
(F) 312-985-5581

ClarkHill\19865\410777\260552327.v5-8/20/20

## CERTIFICATE OF SERVICE

Amelia S. Newton, an attorney, hereby certifies that she caused the above and foregoing Defendant PNC Bank's Answer and Affirmative Defenses and Other Defenses to Plaintiff's Complaint to be served upon counsel of record in this case via the U.S. District Court CM/ECF System on the 24th day of August 2020.

/s/   *Amelia S. Newton*

Amelia S. Newton
anewton@clarkhill.com
CLARK HILL PLC
130 E. Randolph Street, Suite 3900
Chicago, Illinois 60601
(T) 312-985-5900
(F) 312-985-5581

ClarkHill\19865\410777\260552327.v5-8/20/20